IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

TROY M. WILLIAMS,

      Movant,

v.                         Case No. 2:04-cv-01292
                             Case No. 2:02-cr-00110

UNITED STATES OF AMERICA,

      Respondent.

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending is Movant, Troy M. Williams' (hereinafter "Defendant") Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (docket sheet document # 92). This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On May 21, 2002, a federal grand jury sitting in Charleston, West Virginia returned a two-count indictment against Defendant. Count One of the indictment charged that, from on or about December of 2000, to on or about December 1, 2001, Defendant, together with William Morris and other persons known and unknown to the grand jury, knowingly conspired to knowingly and intentionally distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. (# 1 at 1). Count Two of the indictment charged that, on

or about December 1, 2001, Defendant and William Morris, aided and abetted  by each other, knowingly and intentionally distributed a quantity of cocaine base, in violation of 21 U.S.C. § 841(a)(1). (Id. at 2).

William R. Scharf was appointed to represent Defendant in his criminal proceedings.  On September 16, 2002, a pre-trial hearing was held before the presiding District Judge, the Honorable Joseph R. Goodwin.  During the course of the hearing, Defendant expressed his desire to discharge his counsel and proceed pro se.  (# 75 at 6-18).  Although Judge Goodwin advised Defendant of his right to counsel and the perils of proceeding without counsel, Defendant persisted in his desire to proceed pro se.  The District Court granted Defendant's request and Defendant executed a waiver of counsel form.  (Id. at 18; # 27).

Defendant made several pro se motions, including motions for dismissal of the indictment based upon an alleged illegal search and seizure, dismissal of the indictment based upon the prosecution's presentation of allegedly perjured testimony to the grand jury, dismissal of the indictment based upon insufficiency of evidence, and dismissal of the indictment based upon a double jeopardy violation, as well as a motion for a change of venue, based upon allegedly prejudicial pre-trial publicity.  (# 28; # 75 at 18-33).  The District Court denied each of these motions, but granted Defendant's request to hire an investigator.  (Id. at 18-

2

33, 35). The District Court also denied, without prejudice, Defendant's motion for an expert witness on the issue of drug quantities. (<u>Id.</u>)

At the conclusion of the September 16, 2002 hearing, Defendant requested that counsel be re-appointed to represent him. The court granted Defendant's request, re-appointed Mr. Scharf, and also granted Defendant's motion for a continuance of the trial date. (<u>Id.</u> at 39-41).

On October 21, 2002, Defendant, by counsel, moved the court to allow him to waive his right to a jury trial, and to proceed to trial before the District Court, pursuant to Rule 23 of the Federal Rules of Criminal Procedure. The basis for the motion was the allegedly prejudicial pre-trial publicity to which Defendant had been exposed. However, the record does not contain any specific details about the publicity.

On October 29, 2002, the District Court entered an Order granting Defendant's waiver of his right to a jury trial, and permitting a trial to the court. The Order does not contain any specific finding by the district court concerning the alleged pre-trial publicity. (# 46).

Defendant's bench trial took place on November 5 and 6, 2002. According to the evidence presented at trial, on December 1, 2001, Officers Todd Bramlee and J.C. Powell, of the Charleston Police Department, were working undercover in the East End of Charleston,

West Virginia.  (# 60 at 25-26).  At the corner of Washington and Thompson Streets, the officers, who were traveling in an unmarked car, were flagged down by William Morris.  Officer Powell asked Morris if they could buy twenty dollars worth of cocaine base.  (Id. at 26, 54-55).  At that time, Morris was not aware that Bramlee and Powell were police officers.  (Id. at 55, 58).

The officers then asked if they could purchase one hundred dollars worth of cocaine base.  (Id. at 27, 55).  Morris got into the car with them and directed them to drive to his apartment at 1519 1/2 Washington Street, East.  When the three men arrived at the apartment, they were met by a man named Purcelle "Chris" Chandler.  (Id. at 27-28, 55).  Morris asked Chandler to "go get the New York boys."  (Id. at 56).  Chandler left, and the others went into Morris' apartment to wait.  (Id. at 28).  Chandler returned and had a conversation with Morris.  Morris then said, "go get Raheem."  (Id. at 56; # 61 at 28-29).  "Raheem" was a nickname sometimes used by Defendant.  Chandler testified at trial, and confirmed that he knew Defendant to be "Raheem."  (# 61 at 23-24).

Several minutes later, Defendant arrived at the apartment, sat down at a table, looked at the men in the room, and then motioned to Morris to go to an adjacent bedroom.  (# 60 at 29-30).  Seconds later, Morris came out of the bedroom, and said, "who wants the hundred?"  Defendant followed shortly behind him.  Officer Bramlee stated that he wanted the drugs, and Morris handed the cocaine base

4

to him.  Bramlee and Powell then identified themselves as police officers and placed Defendant and Morris under arrest.  (<u>Id.</u> at 30).

Subsequent testing revealed that the five rocks that Morris handed to Officer Bramlee contained .37 grams of cocaine base. (<u>Id.</u> at 88).  Morris was charged separately from Defendant, and he pled guilty to conspiracy to knowingly and intentionally distribute cocaine base, as stated in Count One of the indictment brought against him.  (<u>United States v. Morris</u>, 2:02-cr-00071 (S.D. W. Va.), # 17).  He subsequently cooperated with the United States and testified against Defendant at his trial.

Morris identified Defendant as "Raheem," and as the source for the cocaine base distributed to the officers on December 1, 2001. (# 60 at 57).  Morris further testified that he and Defendant had an arrangement in which Morris would act as a "middle man" for Defendant by finding customers in exchange for quantities of cocaine base.  Morris testified that the arrangement had been in place for approximately one year, from in or around December of 2000 until December 1, 2001.  (<u>Id.</u> at 44-54).  Although Morris could not give specific dates or quantities of cocaine base distributed as part of the arrangement, he testified that, in that period, he obtained cocaine base from Defendant for his personal use on 15-30 occasions and that he brought other people to purchase cocaine base from Defendant on 30-35 occasions.  (<u>Id.</u> at 48-49).

Morris further testified that the average sale was for $40 to $60, but at least one sale was for $100. (Id. at 49-53).

Defendant presented the testimony of Purcelle Chandler, Glen Adams, and Nancy Jones to support Defendant's claim that he was not in West Virginia between November of 2000 and April of 2001 and, thus, he could not have been present at the time the conspiracy was allegedly formed, as charged in the indictment. (# 61 at 18-46).

The District Court found Defendant guilty of both charges in the indictment. In the Presentence Investigation Report ("PSR") prepared by the United States Probation Office, the probation officer determined, based upon Morris's testimony, that Defendant was accountable for five sales of cocaine base, which equated to .66 grams of cocaine base being attributable to Defendant, in addition to the .37 grams from the December 1, 2001 offense conduct. Based upon a total of 1.03 grams of cocaine base, Defendant's base offense level was calculated to be a level 18. The probation officer did not recommend any Chapter Two or Three enhancements to Defendant's sentence, so his total offense level was 18.

However, the probation officer further determined that Defendant qualified as a Career Offender under U.S.S.G. § 4B1.1(B) because he was over the age of eighteen at the time of the instant offense, and had two prior felony convictions for controlled substance offenses. Thus, based upon the statutory maximum of 20

6

years, the probation officer determined that Defendant's adjusted Guideline offense level was 32 and his Criminal History Category was VI.  This calculation resulted in a Guideline sentencing range of 210 to 240 months.[1]

At sentencing, Defendant objected, <u>inter alia</u>, to his relevant conduct calculation (# 71 at 17-26), and to his designation as a Career Offender, on the basis that the two prior convictions for controlled substance violations, which served as the basis for his Career Offender status should be considered as one offense.  (<u>Id.</u> at 26-50).  The District Court overruled Defendant's objections (<u>id.</u> at 26, 50), and sentenced Defendant, as a Career Offender, to a term of 210 months in prison, to be followed by a three-year term of supervised release.  (<u>Id.</u> at 51-56).

Defendant filed a Notice of Appeal and was appointed new counsel, Tracy Weese, to represent him on appeal.  The sole issue raised in Defendant's appeal concerned the District Court's finding that Defendant qualified as a Career Offender.  On December 15, 2003, the United States Court of Appeals for the Fourth Circuit affirmed Defendant's sentence, finding that the District Court had properly applied the Career Offender enhancement.  <u>United States v. Williams</u>, No. 03-4188, 83 Fed. Appx. 514 (4th Cir., Dec. 15, 2003) (unpublished).  (# 87).

---

[1]   The Guideline sentencing range was 210-262 months, but the upper end of the range is limited by the statutory maximum of 20 years, or 240 months.

7

Defendant did not file a petition for a writ of certiorari in the United States Supreme Court.  Accordingly, his judgment became final on or about March 15, 2004.

Defendant filed the instant section 2255 motion (# 92) and Memorandum in Support thereof (# 93) on December 10, 2004.  Because Defendant's motion addressed an issue implicating the United States Supreme Court's recent ruling in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004), the undersigned entered an Order on December 20, 2004, holding Defendant's motion in abeyance until rulings had been made by appellate courts concerning the applicability of the <u>Blakely</u> decision to cases such as Defendant's.  (# 96).

On April 7, 2005, the undersigned ordered a response by the United States to Defendant's section 2255 motion.  (# 100).  The United States filed its response on May 19, 2005.  (# 104).  On July 19, 2005, Defendant filed a reply brief (# 107), along with a Motion for Appointment of Counsel and for an Evidentiary Hearing (# 108) and a Motion to Amend his section 2255 motion.  (# 109).  Those motions have been denied by a separate Order.  This matter is ripe for determination.

## <u>ANALYSIS</u>

Defendant's section 2255 motion raises various claims of ineffective assistance of counsel.  Specifically, Defendant claims

1.  Defendant was denied effective assistance of counsel at pre-trial, during trial, at sentencing and on direct appeal by the failure of his counsel to move for dismissal of both counts of the

8

indictment on the grounds that the indictment failed to charge an essential element of the offense and, thus, failed to charge a specific offense. (# 93 at 1-8);

2.  Defendant was denied effective assistance of counsel at sentencing and on direct appeal by the failure of his counsel to raise objections that the probation office and the sentencing court constructively amended the charges by the grand jury and constructively amended the offenses of conviction. (Id. at 9-13);

3.  Defendant was denied effective assistance of counsel by the failure of his counsel to file a motion to suppress alleged statements made to police by alleged co-conspirator, William Morris, after his arrest and after the conclusion of the alleged conspiracy. (Id. at 14-16);

4.  Defendant was denied effective assistance of counsel at pre-trial, during trial and on direct appeal by counsel's failure to properly handle change of venue issue as to protect Defendant's right to trial by an impartial jury. (Id. at 17-22);

5.  Defendant was denied effective assistance of counsel at sentencing by the failure of his counsel to raise objections on the basis that Defendant's sentence was based upon un-indicted relevant conduct. (Id. at 23-30).

In Strickland v. Washington, 466 U.S. 688 (1984), the United States Supreme Court adopted a two-prong test for determining whether a defendant received adequate assistance of counsel. A defendant must show (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687-91. Moreover, "judicial scrutiny of counsel's

9

performance must be highly deferential." Id. at 689.  Using this standard, and based upon all of the evidence of record, the court will address the merit of each of the allegations concerning ineffective assistance of counsel in the order they were presented by Defendant.

> **A.   Grounds One and Two - Failure to object to allegedly defective indictment and alleged constructive amendment thereof.**

In Ground One of his motion, Defendant asserts:

> The failure of [Defendant's] indictment[] to identify and charge the material and essential element of which (b) subsection offense of § 841 that the grand jury found probable cause that [Defendant] had committed in violation of § 841(a)(1) is a failure to charge a specific offense, and renders the indictment[] constitutionally defective in violation of [Defendant's] Fifth Amendment rights to grand jury indictment, and in violation of his Sixth Amendment jury trial rights, and in violation of his Fourteenth Amendment due process rights to have a jury find him guilty beyond a reasonable doubt of having committed each and every material element of the offense.  Under Federal Rules of Criminal Procedure, Rule 12(b)(2), [Defendant's] trial counsel, or his Appeal counsel could have at any time during the pending of the proceedings moved for dismissal of the indictment on the grounds that [it] fail[s] to charge a specific offense.

> * * *

> Certainly counsel's failure to move for dismissal of both counts of the indictment[] on the above issue falls below an objective standard of reasonableness.

(# 93 at 3).   Concerning the prejudice prong of Strickland, Defendant states:

> [Defendant] had a bench trial on his charges, and in this case through the testimony of government informant, alleged un-indicted co-conspirator (William Morris)(whom

10

the government had purchased his testimony against [Defendant] with promises not to prosecute him) there was factual-material evidence (the actual drugs sold to undercover police officers) of less than one half of a gram of cocaine base, and after having been found guilty for the charged violations of title 21 U.S.C. § 841(a)(1), the probation office was preparing the presetnce [sic; presentence] investigation report was allowed to judge the creditability [sic; credibility] of government informant (Morris) testimony, and attribute the amount of drugs all[e]ged by him to [Defendant], and thus, determine that [Defendant] was guilty of committing an offense in violation of title 21 U.S.C. § 841(a)(1), (b)(1)(C), which is an offense that [Defendant] has never been charged by a grand jury with the commission of. The sentencing court then adopted the probation office's constructive amendment of the indictment and finding that [Defendant] was guilty of an offense in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and proceeded to impose sentences for that offense.

(<u>Id.</u> at 5-6).

In Ground Two of his motion, Defendant makes a related claim, asserting that his counsel failed to object to the alleged constructive amendment of the indictment by the probation officer and the District Court. Specifically, Defendant states in pertinent part:

> Not only did the Probation Office change the charges by the grand jury from alleged violations of title 21 U.S.C. § 841(a)(1), to violations of title 21 U.S.C. § 841(b)(1)(C), but the Probation Office also changed the verdict of the court from convictions for offenses in violation of title 21 U.S.C. § 841(a)(1), to violations of title 21 U.S.C. § 841(b)(1)(C).

> * * *

> The records of this case (the sentencing transcript, and the court[']s judgment order) show that without a single objection from [Defendant's] counsel, the court adopted the Probation Office's constructive amendment of the charges by the grand jury from offenses in violation

11

of 21 U.S.C. § 841(a)(1), to offenses in violation of 21 U.S.C. § 841(b)(1)(C), and adopted the Probation Office's constructive amendment of the offenses of conviction for offenses in violation of § 841(a)(1), to convictions for offenses in violation of § 841(b)(1)(C), and proceeded to sentence [Defendant] for the commission of those offenses, which are offenses that [Defendant] has never been charged by a grand jury with the commission of, and are offenses that [Defendant] has never been tried for, or convicted of.

(# 93 at 9-11).

The United States' Response to Defendant's section 2255 motion addresses these issues as follows:

One of the central themes that seems to dominate defendant's pleading is his belief that his indictment was defective since it charged a violation of 21 U.S.C. § 841(a) but made no reference to the punishment provision of 21 U.S.C. § 841(b). Defendant evidently believes the absence of a citation to 21 U.S.C. § 841(b) in his indictment, rendered the indictment defective for failing to charge an essential element and undermined all of the criminal proceedings that flowed from that indictment. Hence defendant faults his attorney's failure to seek dismissal, challenges the purported amendment of the indictment and challenges the district court's imposition of sentence based upon a finding of guilt to the charge contained within the indictment.

Once again, defendant simply misunderstands the law. The Supreme Court in United States v. Cotton, 122 S. Ct. 1781 (2002), discussed, inter alia, that fact that Congress provided in 21 U.S.C. § 841 for a term of imprisonment of not more than 20 years that would be applicable for any drug offense involving a detectable quantity of cocaine base. An indictment, such as the indictment at issue in Cotton, need not specifically charge the penalty provision of Section (b)(1)(C) in order to properly invoke that punishment. While more enhanced penalties may require a more detailed indictment, there is no requirement that the indictment explicitly allege the punishment provision in order to meet constitutional scrutiny. Defendant's contention, therefore, that there was some defective representation provided to him based upon the failure of his counsel to

12

> seek to dismiss the indictment or to object to a
> purported amendment of the indictment, is clearly without
> merit.   Counsel had no grounds to seek dismissal or
> otherwise object to the indictment.

(# 104 at 9-10).

Defendant's Reply merely reiterates his contention that his attorney failed to properly challenge a defect in his indictment and failed to object to the constructive amendment of the indictment by the probation officer and the court.  Defendant does not provide any additional support for these claims.  (# 109 at 22).

It is immaterial that Defendant's indictment did not cite the penalty provision contained in 21 U.S.C. § 841(b)(1).  Defendant had notice that he was being charged with violations of 21 U.S.C. § 841, which clearly delineates the potential penalties therein.  As stated by the United States, the indictment need not state the penalty provision in order to properly invoke that punishment, and Defendant was properly sentenced within the statutory maximum, as provided in section 841(b)(1)(C).  United States v. Cotton, 122 S. Ct. 1781 (2002).

Thus, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that his trial counsel's failure to move for dismissal of the indictment on the basis that it did not contain the penalty provision, or to object to the alleged constructive amendment of the indictment by the probation officer or the court, when it determined Defendant's

level of relevant conduct, fell below an objective standard of reasonableness. "[T]here can be no claim of ineffective assistance, where, as here, counsel is alleged to have failed to raise a meritless argument." Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996); see also United States v. Kilmer, 167 F.3d 889, 893 (5th Cir. 1999)("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); Ludwig v. United States, 162 F.3d 456, 459 (6th Cir. 1998)("Counsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel.")

Furthermore, because there is no merit to Defendant's claims concerning a defective indictment or the constructive amendment of his indictment, Defendant has not demonstrated that his appellate counsel provided ineffective assistance of counsel by failing to seek an appeal on these issues.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that Defendant is entitled to no relief on his claims of ineffective assistance of counsel, as stated in Grounds One and Two of his motion.

**B.   Ground Three – Failure to file motion to suppress William Morris' statements to police.**

In Ground Three of his motion, Defendant claims that his trial counsel provided ineffective assistance because he failed to move

14

for the suppression of statements made to police by alleged co-conspirator William Morris following his arrest.   Specifically, Defendant states that:

> The alleged crime of conspiracy had ended before alleged
> co-conspirator (William Morris) was arrested and made the
> alleged statements to police . . . . Statements made
> after the completion of the conspiracy are not made
> during the course of the conspiracy and, therefore, are
> not admissible under Rule 801(d)(2)(E) of the Federal
> Rules of Evidence.

(# 93 at 15).  Defendant adds "[i]n this case the record shows that the government's evidence against [Defendant] in its whole concerning conspiracy was the alleged statements by alleged co-conspirator William Morris.   A different outcome is shown had counsel moved to suppress the alleged statements by Morris."  (Id. at 15-16).

The United States Response states in pertinent part:

> Defendant has consistently claimed that his co-
> conspirator William Morris was lying regarding the nature
> of their relationship.   Counsel did indeed file a motion
> to dismiss the indictment based upon an allegation that
> Morris' grand jury testimony was perjured.   The district
> court correctly denied that motion.   The testimony of
> Morris was both relevant and admissible at trial.   The
> credibility of his testimony was properly left to the
> court.   There were no grounds on which counsel could have
> precluded Morris' testimony at trial.   Any allegation of
> ineffective assistance of counsel based upon a failure to
> suppress that testimony cannot withstand scrutiny.

(# 104 at 10).

In his Reply, Defendant contends that William Morris was working as a confidential informant at the time of their arrest and, thus, could not have been a member of a conspiracy with

15

Defendant.   (# 109 at 6).   Defendant further asserts that he was
not in the Southern District of West Virginia during a portion of
the time that Morris claims the conspiracy was in effect.   (Id.)
Defendant raised both of these issues in his pre-trial motions and
presented evidence thereupon at trial.   Defendant further claims:

> Yes, Mr. Morris did testify at trial.   But, what he
> testified to was not what he testified to at the grand
> jury or in the statements he give to police, the night of
> the  arrest.   [T]he  statements  were  inadmissible  as
> evidence, what Mr. Morris told the grand jury was lies,
> and this time, I'm ready!!!

(Id.)

Neither  the  statement(s)  that  William  Morris  gave  to  the
police following his arrest, nor the minutes of his grand jury
testimony, are part of the record before this court.   Thus, they
cannot be verified.   At trial, Mr. Morris testified that Defendant
(a.k.a. "Raheem") had come to him about buying cocaine base for
himself or others "a few times from around December of 2000 all the
way up to about December, 2001."   (# 60 at 44).   Defendant adds
that "Mr. Scharf wanted me to admit guilt, when[] I would not he
then said, I could not suppress the evidence (statements made by
Mr. Morris) he said[] the judge would only deny it anyway, [b]ut it
would have preserved the issue for appeal?"   (# 109 at 9).

Defendant's confusing Reply brief raises several different
issues concerning the testimony of William Morris.   Turning first
to the issue initially pled by Defendant - that William Morris's
statements were inadmissible under Rule 801(d)(2)(E), there is

16

absolutely no merit to that claim.

Defendant's claim that Morris' testimony should have been suppressed simply because he gave a statement to the police after he was arrested is absurd and is not a proper statement of the law. If that were the case, nearly all co-defendant or co-conspirator testimony would have to be excluded.

Furthermore, Morris' testimony was not hearsay because he testified at trial. Rule 803(c) of the Federal Rules of Evidence provides in pertinent part that "'[h]earsay' is a statement <u>other than one made by the declarant while testifying at the trial or hearing</u> . . . ." Fed. R. Civ. P. 803(c)(emphasis added). Moreover, Morris' testimony concerned conduct that did occur during the course of, and in furtherance of, the alleged conspiracy, and there was no reasonable basis to suppress the statements he gave to police following his arrest.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that his trial counsel's conduct was constitutionally ineffective when he failed to move to suppress Morris' statements to the police.

Although not specifically pled in his section 2255 motion, to the extent that Defendant has repeatedly claimed that Morris provided false testimony, and that, consequently, his testimony should have been suppressed or held inadmissible, the undersigned proposes that the presiding District Judge **FIND** that Defendant has

not demonstrated that any of Morris' testimony was actually false, and the weight given to his testimony was a matter properly within the province of the presiding District Judge as the trier of fact.

Because all of these arguments lack merit, the undersigned proposes that the presiding District Judge **FIND** that Defendant cannot demonstrate that his trial counsel or his appellate counsel provided ineffective assistance of counsel by failing to raise these issues at trial or on appeal.

### C.   Ground Four - Failure to properly handle change of venue issue.

In Ground Four of his motion, Defendant asserts that his trial counsel provided ineffective assistance because he failed to pursue a motion for a change of venue based upon alleged prejudicial pre-trial publicity, and that as a result, Defendant was forced to waive his right to a jury trial and, instead, proceeded with a bench trial.  Specifically, Defendant states:

> The records of this case (trial transcripts) will show that [Defendant's] court appointed counsel had refused [Defendant's] request for counsel to seek a change of venue on grounds that adverse, prejudic[i]al publicity on an un-related murder investigation had made it impossible for [Defendant] to select an impartial jury from the district that alleged crime was committed in. The records of this case will show that since [Defendant's] court appointed counsel had refused to file a motion for a change of venue on the above grounds, [Defendant] discharged his court appointed counsel and filed pro se a motion for a change of venue on the above grounds.

> The records will show that the district court denied [Defendant's] pro se motion for change of venue. But the record will also show that due to objections by

18

> [Defendant] to the court['']s denial of the motion for a
> change of venue, the court appointed an Investigator at
> government expense to assist [Defendant] in trying to
> establish that he could not select an impartial jury from
> that district due to adverse, prejudicial publicity in
> that district.

(# 93 at 17-18).

Defendant further asserts that his investigator's report indicated that he could not receive a trial by an impartial jury in this district, but the district court nevertheless denied his motion for change of venue. (Id. at 18). Thus, Defendant asserts that he "was left with but one choice, and that was to waive his jury trial rights and move for a bench trial." (Id.) Defendant further asserts that the district court permitted Defendant to waive his right to a jury trial "due to adverse, prejudicial pretrial publicity." (Id.)

The United States' Response states:

> The record also provides no support for defendant's
> claim that his attorney failed to properly handle a
> change of venue motion thereby denying defendant's right
> to a jury trial.  In the pretrial proceeding, at a time
> when defendant was still pro se, he did offer a motion
> for change of venue based upon an allegation of pretrial
> publicity.  The court, however, denied that motion and
> nothing in the record would have supported an attempt
> [for] counsel to revisit the issue.  Certainly, there is
> nothing in the record to support defendant's claim [that]
> the failure of the court to grant a venue motion[]
> compelled him to accept a bench trial rather than going
> to trial before a jury.

> Defendant was not denied a jury trial.  With the
> assistance of counsel, he freely elected not to seek one
> but, rather, to place his faith in a trial before a more
> sophisticated finder of fact.  Although that course of
> action did not produce the result defendant would have

> wished, there is no reason to conclude that defendant was
> denied a right that he wished to exercise or that his
> counsel's performance in this regard was defective.

(# 104 at 11).  Defendant's Reply does not address any new points
on this claim.  (# 109).

The record before this court indicates that Defendant made a
pro se motion for a change of venue during his pre-trial hearing on
September 16, 2002, and that the motion was denied.  (# 75 at 32-
33).  The presiding District Judge did, however, permit Defendant
to hire an investigator.  (Id. at 34-35).  After Defendant
indicated at the conclusion of that hearing that he wanted to have
counsel re-appointed, there was no new motion for a change of venue
made and there is no evidence in the record concerning the alleged
pre-trial publicity that Defendant claims would have prevented him
from having a fair jury trial.

Rather, Defendant, by counsel, voluntarily waived his right to
a jury trial and elected to proceed with a bench trial.  Although
his waiver document states that "on May 7, 2002, defendant received
considerable adverse media publicity in connection with the
investigation of an offense unrelated to the matters charged in the
indictment," there is no specific evidence concerning the findings
of Defendant's investigator concerning this issue, and the District
Court did not make any specific findings concerning Defendant's
ability to obtain a fair jury trial.  The District Judge simply
accepted the waiver.  (# 46).

20

"Under the Sixth and Fourteenth Amendments, a criminal defendant is guaranteed a trial by an unbiased jury," citing, among other cases, Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 551 (1976) and Murphy v. Florida, 421 U.S. 794, 799 (1975).  Respondent asserts, "[a] change of venue is required as a matter of constitutional law only when the jury pool is tainted, 'by so huge a wave of public passion' that the impaneling of an impartial jury is impossible." Mu'min v. Pruett, 125 F.3d 192, 199 (4th Cir. 1997)(citing Irvin v. Dowd, 366 U.S. 717, 728 (1961)).

The undersigned agrees that Defendant has not demonstrated that the jury pool was tainted by "so huge a waive of public passion" that it would have been impossible to impanel an impartial jury, or that the outcome of his proceeding would have been different had he had a jury trial.  Based upon the evidence of record, Defendant's waiver of his right to a jury trial was voluntary.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that he was denied his right to a jury trial, or that his counsel was ineffective in failing to pursue a motion for a change of venue.

**D.  Ground Five - Failure to object to attribution of undindicted relevant conduct.**

Defendant also challenges his counsel's failure to object to the District Court's determination of his sentence based upon conduct that was not charged in his indictment or proven beyond a

21

reasonable doubt.   Defendant specifically states:

> The indictment[] [does] not charge that [Defendant] conspired to distribute .37 grams of cocaine base on or about December 1, 2001 and [does] not charge that he did distribute .37 grams of cocaine base on or about December 1, 2001.
>
> The indictment[] [does] not charge that he conspired to distribute .66 grams of cocaine base in violation of 21 U.S.C. § 841 on six different occasions to six different individuals.
>
> All of the above acts by the Probation Office and the sentencing court denied [Defendant] his Fifth Amendment rights to a grand jury indictment and denied him his sixth amendment rights to a jury trial.
>
> * * *
>
> The United States Supreme Court has just made clear in Blakely v. Washington, ___ U.S. ___, 2004 U.S. Lexis 4573 (June 24, 2004) that the statutory maximum punishment under Apprendi v. New Jersey, 530 U.S. 466, that a Judge can impose, is the maximum statutory guideline sentence that a Judge can impose before the finding of any additional factors which would increase a sentence.
>
> Before any sentence can be imposed for a conviction for a violation of title 21 U.S.C. § 841(a)(1) additional factors under the (b) part subsections of § 841 must be determined.  Those (b) part subsections of § 841 must be charged in the indictment and proved to a jury beyond a reasonable doubt.  See Blakely v. Washington, supra, and Apprendi v. New Jersey 530 U.S. 466, supra.

(# 93 at 26-27).

The United States' Response states that because Defendant was sentenced as a Career Offender, the calculation of his relevant conduct was irrelevant.   Nevertheless, the United States argues Defendant's sentence under the Guidelines was appropriately determined.   The Response states:

22

> In many ways, defendant's arrest, prosecution, conviction and sentence followed the standard common in drug prosecutions.  His criminal conduct was discovered through the exercise of effective police undercover work.  He was tried based, in part, upon the testimony of a co-conspirator which was subject to rigorous cross-examination and careful judicial consideration.  He was sentenced in accordance with his status as a career offender which even after the Supreme Court decision regarding the United States Sentencing Guidelines in United States v. Booker, 125 S. Ct. 738 (2005) would still withstand scrutiny.  Defendant may be dissatisfied with the results of his criminal prosecution but the record discloses no basis for defendant's claim that he is entitled to collateral relief.

(# 104 at 12).

The undersigned has already addressed Defendant's claim that the indictment was defective because it did not include the penalty provision in section 841(b)(1), and found that such claim lacks merit.  Furthermore, as the Fourth Circuit held, Defendant was properly sentenced as a Career Offender, which made any determination of Defendant's relevant conduct virtually irrelevant.  Accordingly, there is no basis for Defendant's claim that his sentence was improperly based upon un-indicted conduct.

Nevertheless, the undersigned notes that Defendant was properly sentenced under Apprendi to less than the statutory maximum of 20 years.  To the extent that Defendant is now claiming that, in light of the Blakely and Booker decisions, he should be re-sentenced, he is not entitled to relief thereunder.

On January 12, 2005, the Supreme Court decided <u>United States v. Booker</u>, 125 S. Ct. 738, which reaffirmed the Court's holding in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), applied the holding in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004) to the Sentencing Guidelines, and held: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756. The <u>Booker</u> holding applies "'to all cases on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" 125 S. Ct. at 769 (quoting <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328 (1987)). Defendant's case has concluded direct review and is final. Thus <u>Booker</u> does not apply, unless the Supreme Court rules that it is to be applied retroactively to cases on collateral review.

On November 7, 2005, the United States Court of Appeals for the Fourth Circuit held:

> The rule announced in <u>Booker</u> is a new rule of criminal procedure, but it is not a watershed rule. Accordingly, the rule is not available for post-conviction relief for federal prisoners, like Morris, whose convictions became final before <u>Booker</u> (or <u>Blakely</u>) was decided.

<u>United States v. Morris</u>, No. 04-7889, slip op. at 11 (4th Cir. Nov. 7, 2005).

Nine other Circuit Courts of Appeals previously reached the same conclusion and ruled that Booker does not apply retroactively to cases on collateral review.  See United States v. Cruz, 423 F.3d 1119 (9th Cir. 2005); Padilla v. United States, 416 F.3d 424 (5th Cir. 2005)(per curiam); Never Misses A Shot v. United States, 413 F.3d 781 (8th Cir. 2005)(per curiam); United States v. Bellamy, 411 F.3d 1182 (10th Cir. 2005); Lloyd v. United States, 407 F.3d 608 (3rd Cir.), cert. denied, 126 S. Ct. 288 (2005); Guzman v. United States, 404 F.3d 139 (2nd Cir.), petition for cert. filed, No. 05-5187 (Jul. 5, 2005); Humphress v. United States, 398 F.3d 855 (6th Cir.), cert. denied, 126 S. Ct. 199 (2005); Varela v. United States, 400 F.3d 864 (11th Cir.)(per curiam), cert. denied, 126 S. Ct. 312 (2005); McReynolds v. United States, 397 F.3d 479 (7th Cir.), cert. denied, 125 S. Ct. 2559 (2005).  Not one circuit court of appeals has decided that Blakely or Booker applies retroactively on collateral review.

Based on Morris, and the other decisions rendered by circuit courts of appeals reaching the same conclusion, the undersigned proposes that the presiding District Judge **FIND** that Movant's conviction was final before Blakely and Booker were decided, and that neither Blakely nor Booker applies retroactively on collateral review.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Defendant is entitled to no relief on his claim of ineffective assistance of counsel, as stated

in Ground Five of his motion.

    **E.   Other arguments raised in Defendant's Reply.**

    Defendant's lengthy and convoluted Reply brief addresses issues that were not raised in his initial section 2255 motion. Specifically, a large part of Defendant's Reply re-addresses claims raised by Defendant during his pre-trial proceedings concerning alleged Fourth Amendment search and seizure violations and the exclusionary rule. Those claims were addressed and denied by the presiding District Judge, who found that Defendant had no standing to raise any Fourth Amendment claims concerning the drugs obtained in the apartment on December 1, 2001, because Defendant was not an owner or lessee of the property. To the extent that Defendant is attempting to resurrect those claims in this collateral proceeding, he is barred from doing so.

    It also appears to the undersigned that, for the first time in any of Defendant's proceedings in this court, Defendant has raised issues concerning alleged violations of the Confrontation Clause of the Sixth Amendment. Defendant argues: "[J]udge Goodwin allowed evidence of alleged 6 people, who states witness Mr. Morris said -Hearsay-, I provided drugs to?" (# 107 at 21). It appears that Defendant is referring to questions posed by Judge Goodwin to witness Morris, asking Morris to name other persons whom Morris had taken to Defendant for the purpose of buying crack cocaine. (# 60 at 74-75). Morris testified as to what he did with these

26

individuals, and did not testify as to what they said.  There was no Confrontation Clause violation, and the presiding District Judge should so find.

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's section 2255 motion.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S.

140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, Troy Williams, and to counsel of record.

<table>
<tr><td>___December 6, 2005___<br>Date</td><td><i>Mary E. Stanley</i><br>Mary E. Stanley<br>United States Magistrate Judge</td></tr>
</table>

28